**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAVISHANKER NARAYANAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAREX GROUP PLC, IAN LOWITT, and ROBERT IRVIN,<br><br>Defendants. | Case No. 1:25-cv-08393-RA-SDA<br>[rel. 1:25-cv-08368-RA-SDA]<br><br>**CLASS ACTION** |

# DECLARATION OF WILLIAM M. BRODY IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

I, William M. Brody, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner of Schall Brown & Schwartz LLP ("Lead Counsel"), Court-appointed Lead Counsel for Lead Plaintiffs Ali Shahsavanpour and Jaimin Patel ("Lead Plaintiffs") and the proposed Settlement Class. I am admitted pro hac vice. I submit this Declaration in support of Lead Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement (the "Motion"). I have personal knowledge of my own acts and of the acts taken by my firm under my direction in this Action. As to all other matters, my statements are based on my review of the files and records of this Action and of publicly available materials, and I believe them to be true. If called as a witness, I could and would testify competently to the matters stated herein. Capitalized terms not defined herein have the meanings given in the Stipulation and Agreement of Settlement dated August 20, 2026 (the "Stipulation").

2. A true and correct copy of the Stipulation, together with its exhibits, is attached hereto as Exhibit 1. Lead Counsel conferred with counsel for Defendants, Latham & Watkins LLP, regarding the relief requested in the Motion, and the relief requested in the Motion is unopposed. The facts concerning the conduct and sequence of the settlement negotiations are set forth in the accompanying Declaration of David J. Schwartz, who conducted those negotiations for Lead Plaintiffs, and are not repeated here.

## I. LEAD COUNSEL'S INVESTIGATION

3. Lead Plaintiffs filed the First Amended Complaint (the "FAC") on April 20, 2026. ECF No. 44. The FAC asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 on behalf of investors who purchased or otherwise acquired Marex ordinary shares from November 7, 2024 through August 5, 2025, inclusive (the "Class Period").

4. The Parties reached an agreement in principle to settle before Defendants' response to the FAC was due. They advised the Court of the settlement on June 5, 2026. ECF No. 45.

5. Before agreeing to any settlement figure, Lead Counsel conducted an extensive investigation regarding liability, loss causation, and, among other things, damages. This investigation included, without limitation: (a) review and consideration of the allegations in the original complaint filed in this action and the August 5, 2025 report published by short seller NINGI Research (the "NINGI Report"); (b) research and analysis into the available and potentially relevant United States and United Kingdom public record for the relevant periods, including Marex's registration statements and prospectuses, its Forms 20-F and 6-K, its U.S. and U.K. annual reports, its U.K. corporate and regulatory filings, investor presentations (including the April 2, 2025 Investor Day materials), earnings releases, earnings-call and conference-call transcripts, other public statements, and market and trading data, including materials that turned out not to be relevant; (c) analysis of documents concerning Marex's alleged counterparties and related parties in order to investigate the NINGI Report's allegations; (d) analysis of the NINGI Report's allegations and efforts to corroborate them, as well as analysis of Marex's responses to the NINGI Report; (e) attempts to speak with NINGI Research; (f) engagement of a paid investigative firm to conduct an extensive search for former Marex employees in the United States and the United Kingdom and to contact and interview the witnesses it identified; (g) conducting follow-up interviews with potential witnesses identified and contacted by the investigators; (h) comparison of Marex's reported Market Making "Securities" revenue with the published volume metric in each period in which both appeared; (i) calculation and analysis of

potential damages; and, among other things, (j) extensive research and analysis regarding liability, loss causation and damages.

6. The NINGI Report accused Marex of nine categories of financial misconduct. Based on the information available to it, Lead Counsel decided to plead only one theory in the FAC: that Marex presented revenue from the "Securities" line of its Market Making business beside a published volume metric that measured only the exchange-traded portion of that business, making the paired presentation materially misleading, as reflected in the FAC. Lead Counsel evaluated each of the NINGI Report's allegations against the results of its investigation. In the exercise of its professional judgment and based on its investigation and analysis, Lead Counsel determined that the theory pleaded in the FAC was a strong and supportable basis for recovery on behalf of the class, and that the Report's remaining categories of alleged misconduct did not warrant inclusion as part of the claims in the FAC.

## II. THE SETTLEMENT AND THE STIPULATION

7. Following the negotiations described in the concurrently filed Declaration of David J. Schwartz, the Parties executed a confidential Term Sheet. They advised the Court of their agreement in principle on June 5, 2026. ECF No. 45. The Parties then negotiated and drafted the Stipulation and the documents needed to seek preliminary and final approval of the Settlement.

8. The executed Stipulation and its exhibits, a true and correct copy of which is attached hereto as Exhibit 1, comprise: Exhibit A (the proposed Preliminary Approval Order); Exhibit A-1 (the long-form Notice, including the Plan of Allocation as its Appendix); Exhibit A-2 (the Proof of Claim and Release); Exhibit A-3 (the Summary Notice); Exhibit A-4 (the Postcard Notice); and Exhibit B (the proposed Judgment). The proposed Preliminary Approval

Order would authorize notice to the Settlement Class, provide for administration of the Settlement, and set the schedule of settlement-related events. The Notice and the Proof of Claim and Release explain Settlement Class Members' rights and collect the transaction information needed to process Claims. The proposed Judgment would finally approve the Settlement, enter the releases, and dismiss the Action with prejudice. Stipulation ¶¶ 3.2–3.3.

9. The Settlement provides for payment of $950,000.00 in cash (the "Settlement Amount") into an interest-bearing escrow account maintained by The Huntington National Bank, the independent Escrow Agent, to be held as a qualified settlement fund (the "Settlement Fund"). As set forth in the Stipulation, payment is due within the later of sixty calendar days after entry of the Preliminary Approval Order or receipt of complete payment information. Stipulation ¶¶ 1.16–1.18, 2.1, 2.4–2.7.

## III. DAMAGES-RELATED ISSUES REFERENCED IN THE MEMORANDUM

10. Lead Counsel estimated the number of damaged shares and potential aggregate damages using a standard damages model for claims under Section 10(b) of the Securities Exchange Act of 1934, with per-share inflation measured by the August 5, 2025 decline and with the 90-day limitation of 15 U.S.C. § 78u-4(e) applied. The damaged-share estimate was derived from Marex's reported trading volume using customary adjustments. The figures were computed by my firm from publicly available data: Nasdaq official daily closing prices for Marex ordinary shares, Marex's reported daily trading volume, and the share-count information disclosed in Marex's SEC filings, including its 2025 Annual Report on Form 20-F.

11. The PSLRA caps damages on any transaction at the difference between the purchase price and the mean trading price of the security during the 90-day period beginning with the corrective disclosure. 15 U.S.C. § 78u-4(e)(1), (3). Based on my firm's review of

publicly available Nasdaq daily price data, the mean here was calculated to be $33.20 per share, the average of the daily closing prices of Marex ordinary shares over the 63 trading days from August 5, 2025 through October 31, 2025, the last trading day within the statutory 90-day period. As set forth in the Stipulation, a day-by-day schedule of closing prices and running average closing prices (Table B to the Plan of Allocation) will be posted on the settlement website. According to the information available to counsel in its work calculating damages, of the 184 trading days in the Class Period, 51 closed below $33.20, the last of them on March 18, 2025. Shares purchased on those days and held through the end of the 90-day period therefore have a recognized loss amount of zero under the Plan of Allocation.

12. On that model, an estimated 36.17 million Marex ordinary shares were purchased during the Class Period and held through the August 5, 2025 disclosure. As an arithmetic step, assuming that the pleaded misrepresentations caused the entire $2.33 per-share decline in the Nasdaq closing price of Marex ordinary shares on August 5, 2025, and applying the full $2.33 to every estimated damaged share before the transaction-specific limitations of 15 U.S.C. § 78u-4(e), aggregate damages would be approximately $84.3 million. Assuming the entire August 5, 2025 decline could be recovered and applying the § 78u-4(e) limitations, with damaged shares assumed held through the 90-day statutory period, aggregate damages would be approximately $80.2 million. The $950,000 Settlement Amount is approximately 1.18% of that $80.2 million scenario. Both figures are plaintiff-favorable, complete-victory benchmarks, not estimates of likely trial recovery. Apportioned equally among the NINGI Report's nine allegations, the aggregate damages number would be approximately $8.9 million instead of 80.2 million, and the Settlement would equal approximately 10.7% of it.

13. Lead Counsel engaged an independent consulting expert to confirm the reasonableness of its damages estimates and related calculations. That expert performed his own analysis and calculations and independently confirmed the reasonableness and appropriateness of Lead Counsel's methodology, the inputs underlying Lead Counsel's calculations, and Lead Counsel's overall damages estimates.

14. If the maximum amounts disclosed in the Notice are requested and approved, deductions from the Settlement Fund would be attorneys' fees of $316,666.67 (one-third of the Settlement Fund), Litigation Expenses of $75,000.00, and Notice and Administration Costs, including Taxes, estimated by the proposed Claims Administrator, Strategic Claims Services ("SCS"), at $78,000. The projected Net Settlement Fund would therefore be approximately $480,333.33, or approximately 50.6% of the Settlement Amount. Because that projection applies maximum requested amounts and a cost estimate, it is a conservative projection, not a guaranteed minimum. On those figures, the counsel-to-class ratio is approximately 0.66 to 1, comparing the $316,666.67 maximum fee with the $480,333.33 projected for the Settlement Class, and approximately 0.82 to 1 if all requested Litigation Expenses are attributed to counsel. The estimated average recovery is approximately $0.03 per allegedly damaged share before deduction of Court-approved fees, expenses, and costs. If the Court approves the fee and expense application in full, the estimated average cost would be approximately $0.01 per allegedly damaged share. Notice ¶¶ 3, 5.

15. Based on my firm's review of publicly available Nasdaq daily trading and price data and Marex's SEC filings, aggregate reported trading volume in Marex ordinary shares during the Class Period was approximately 148.1 million shares over the 184 trading days in the

Class Period, an average daily volume of approximately 805,000 shares, against approximately 72.2 million ordinary shares outstanding as of December 31, 2024.

## IV. LEAD COUNSEL'S EXPERIENCE

16. Schall Brown & Schwartz LLP and its attorneys have substantial experience prosecuting securities class actions in this District and in federal courts nationwide. A true and correct copy of the firm's resume is attached hereto as Exhibit 2. That experience, together with the factual investigation, legal analysis, market work, and damages analysis described above, permitted Lead Counsel to make an informed assessment of the strengths, weaknesses, and settlement value of the claims, notwithstanding that the Action settled before formal discovery.

## V. IDENTIFICATION OF AGREEMENTS (FED. R. CIV. P. 23(e)(3))

17. Pursuant to Federal Rule of Civil Procedure 23(e)(3), Lead Plaintiffs identify the following agreements made in connection with the Settlement: (a) the confidential Term Sheet executed by counsel for the Parties on or about June 2, 2026, which memorialized the agreement in principle and which the Stipulation supersedes, Stipulation ¶ 13.9; (b) the Stipulation and its exhibits, attached hereto as Exhibit 1; (c) the confidential Supplemental Agreement executed with the Stipulation, referenced in Stipulation ¶ 9.3, which Lead Plaintiffs will submit to the Court for in camera review upon request; and (d) the Escrow Agreement between Lead Counsel and The Huntington National Bank referenced in Stipulation ¶ 1.18, governing custody and disbursement of the Settlement Fund. There are no other agreements made in connection with the Settlement.

## VI. EXHIBITS

18. Attached hereto are true and correct copies of the following:

- Exhibit 1: the Stipulation and Agreement of Settlement dated August 20, 2026 and executed by the parties, together with its Exhibits A, A-1, A-2, A-3, A-4 and Exhibit B;
- Exhibit 2: the firm resume of Schall Brown & Schwartz LLP.

I, William M. Brody, declare under penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2026, at Los Angeles, California.

*/s/ William M. Brody*
William M. Brody

**PROOF OF SERVICE**

I hereby certify that on this 20th day of August, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ William M. Brody*
William M. Brody